UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MICHAEL LANDRY, TREADWELL FRANKLIN INFRASTRUCTURE CAPITAL, LLC, and PATRIOT OFFSHORE MARINE SERVICES, LLC,** Plaintiffs, <br><br> v. <br><br> **QBE Europe SA/NV** Defendant. | Civil Action No.: |

## PLAINTIFFS' COMPLAINT

Plaintiffs, Michael Landry ("Landry") and Treadwell Franklin Infrastructure Capital LLC ("TFIC"), and Patriot Offshore Marine Services, LLC ("POMS") (collectively "Plaintiffs") bring this action against QBE Europe SA/NV ("QBE"). Plaintiffs allege as follows:

## INTRODUCTION

1. This dispute arises out of a foreign-U.S. partnership arrangements for offshore wind development. Plaintiffs with QBE's insured formed a joint venture entity, POMS, to build and operate wind farm support vessels. Plaintiffs commenced an action in this Court against QBE's Insured ("Related Action") to seek to recover the more than 18 million dollars in investment, costs, and expenses paid, lost profits and other injuries arising from QBE's Insured's willful bad faith, intentional misconduct, violations and breaches of POMS's Operating Agreement and Memorandum of Understanding ("MOU") and unilateral actions that scuttled several contracts/charter parties with Vineyard Wind, General Electric and the development of further business opportunities, all as described infra (collectively, the "Projects"). This action seeks to recover from

-1-

QBE for its violations of Massachusetts General Laws Chapter 93A §§2 and 11 as well as Chapter 176D §3(9).

## PARTIES

2. Landry is an individual who resides in Marshfield, Massachusetts.

3. TFIC is a Delaware Corporation with a principal place of business located at 14-16 York Street, Portland, Maine. It is comprised of two members that reside in Maine.[1]

4. POMS is a limited liability company organized under Massachusetts law with a principal place of business within the District.

5. QBE is QBE Europe SA/NV, VAT BE 0690.537.456, RPM/RPR Brussels, ('QBE Europe'). QBE Europe is registered in Belgium under the number 0690.537.456. Its registered office is at 37, boulevard du Régent, 1000 Brussels - Belgium. The Danish branch of QBE Europe is registered at the above address under No 39800985. QBE Europe is authorized by the National Bank of Belgium (NBB) under license number 3093.

## QBE INSUREDS AND RELATED ACTION

6. The relevant QBE's Insureds are :

    a. World Marine Offshore A/S ("WMO"), a Denmark corporation with a place of business located at Torkesaj 1 DK-6700, Esberg, Denmark.

    b. At all relevant times, 50% ownership of WMO was held by Exes Invest which was equally owned by Lars Christian Zohner ("Zøhner"), Peter Lykke Kjeldsen,

---

[1] At the filing of the Complaint, TFIC's principal office was located at 40 Forest Falls Drive, Suite 2, Yarmouth, Maine 04096 and was comprised of three members that reside in Maine. TFIC has since moved and the remaining two members bought out the third member who has retired.

        John Mejer, Jogvan Ullmann, Jimmy T. Kristensen ("Kristensen") and Jesper Mortensen. Exes Invest were the founders and management of WMO. The remaining 50% was held by a Danish investment group called WMO Shipping A/S.

  c.  World Marine Offshore LLC ("WMO LLC") is Delaware limited liability company and wholly owned subsidiary of WMO.

  d.  Zohner is a resident of Denmark and is a shareholder in WMO. Zohner was CEO of WMO from its inception. As set forth below, he was later removed from that position but remained a shareholder.

  e.  Kristensen is a resident of Denmark and is a shareholder in WMO. Kristensen was always the COO for WMO from its inception. At the time Zohner was removed as CEO, Kristensen became a member of WMO's Board of Directors.

7.  The Related Action is captioned *Michael Landry, et. Al. v. World Marine Offshore A/S, et. al.*, Case No.: 22-CV-11432-AK.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

9.  This Court has personal jurisdiction over each of the Defendants by virtue of the Massachusetts long arm statute, Mass. Gen. L. c. 223A, §3 and the United States Constitution. The conduct of the Defendant articulated herein caused and continues to cause damage to the Plaintiffs, all which occurred within the Commonwealth of Massachusetts. QBE provided Directors' and Officers' Liability Insurance to WMO,

      WMO LLC, Zøhner and Kristensen for the operations in the United States, including Massachusetts to conduct business for WMO and their own financial benefit. QBE is providing a defense for Zøhner and Kristensen in Related Action.

10. Venue is proper in this District because all the events that give rise to this action occurred within this District and all parties agreed to this District being the proper venue.

## FACTUAL BACKGROUND FROM RELATED ACTION

11. The instant matter involves Landry's engagement in a joint venture with WMO.

12. WMO portrayed itself to be a provider of many services concerning the offshore wind market to include, crew transfer, offshore support, offshore standby services to ferry services, and more.

13. The Jones Act requires that all waterborne shipping points between points within the U.S. be carried by vessels built in the U.S, owned by U.S. Citizens (at least 75%), and manned with U.S. citizens crews. The Act essentially bars foreign built and operated vessels from engaging in U.S. domestic commerce.

14. On September 15, 2017, Landry, Kristensen, and Zøhner began to discuss plans to enter the U.S. windfarm market.

15. Landry needed the experience and financial backing of a larger company like WMO.

16. Likewise, WMO needed Landry to operate in Massachusetts (or anywhere in the United States) as a foreign company owned by "non-United States citizens."

17. On March 8, 2021, together, Landry, Kristensen, and Zøhner formed a joint venture where WMO provided the financing resources, financial information and proposals to clients, along with "management expertise, Certification, Safety Management Systems,

Vessel Management Systems," and various certifications to operate the windfarm support vessels from Massachusetts.

18. Zøhner and Kristensen were involved in the negotiation of the terms and structure of the joint venture that ultimately became POMS.

19. On August 30, 2020, Landry and Zøhner executed a Joint Venture Consortium Declaration on behalf of WMO and Landry's company Patriot Offshore, Inc. upon submitting a binding bid to Vineyard Wind, LLC ("VW") for a contract.

20. In December 2020, the joint venture engaged a law firm to begin the compliance work to form POMS, and then on March 8, 2021, the certificate of organization for POMS and parent companies was filed with the Massachusetts Secretary of the Commonwealth.

21. The structure provided that WMO had an "aggregate interest" of 49% in POMS.

22. Thereafter, Zøhner marketed POMS in the U.S. East Coast market as a venture that WMO was 49% co-owner of.

23. Once Zøhner notified VW—the contract that the joint venture had previously bid on—that POMS was officially formed, POMS was awarded the contract through negotiation efforts led by Landry and Zøhner.

24. In July 2021, TFIC (a servicer and developer of infrastructure assets, financing, and other services) met with Zøhner and Kristensen to discuss a future partnership with POMS.

25. TFIC had no experience in any offshore industry and relied heavily on WMO, Zøhner, and Kristensen's experience and representations.

26. Based upon Zøhner, Kristensen and WMO's representations regarding the "profitability and success" of the windfarm industry, on August 31, 2021, the TFIC management committee approved a proposal to join POMS.

TFIC's role was to lead financing and assist in raising capital.

27. On October 8, 2021, Zøhner informed TFIC that WMO wanted to move forward with adding TFIC to POMS.

28. Between early October 9 and 11, 2021, Zøhner and TFIC drafted a Memorandum of Understanding ("MOU") that was executed by Landry, Zohner, and TFIC on October 15, 2021.

29. The purpose of the MOU was to "form a business partnership with shareholding by each of the Parties" in POMS to be managed by a board of directors that included Zøhner as director and Kristensen as a "substitute Director."

30. The parties agreed to "jointly pursue successful execution of" projects and agreed to work exclusively with each other and not engage any business with third party firms without consent.

31. Other important provisions included that Massachusetts law and jurisdiction applied to its terms and conditions; all parties agreed to commit an initial $559,000 equity funding, with WMO providing further equity funding at a "promoted percentage" of 55.88%; and a binding non-compete clause that prohibited parties from competing with POMS for windfarm business within the U.S. and its territories.

32. TFIC and Zøhner jointly drafted an Interim Operating Agreement ("IOA") that was executed by Zøhner on November 9, 2021

33. It shared similar terms as the MOU, such as the Massachusetts law and non-compete clauses. Plaintiffs understood Zøhner to be the designated person to act on behalf of WMO for all POMS purposes, and Kristensen was his designated substitute.

34. The IOA called for a 10-day notification before any "change of control" of a member through written notice.

35. In addition to the contract with Vineyard Wind Offshore Logistic Tender, POMS secured additional contracts due to "representations" made by Zøhner and Kristensen to various business.

36. On August 10, 2021, Landry and Zøhner signed a Letter of Intent on behalf of POMS with General Electric ("GE") to begin the "vessel engineering and design work" for the construction of two charter vessels.

37. In October 2021, Zøhner represented to GE and Plaintiffs that WMO had the necessary capital to fund the two charter vessels.

38. He provided a financial spreadsheet and advised that there was "sufficient equity available behind WMO," and that the Board of Directors from "both companies" confirmed the financial status with the banks.

39. Additionally, Zøhner represented that there was €107 Million available for the projects, which was sufficient capital and that the "board of directors" confirmed the capital was in fact, sufficient.

40. Zøhner and Kristensen followed up by circulating an "Investor Presentation" that made representations about funding, contracts and joint ventures WMO obtained, contracts that POMS acquired, the fact that WMO "actively owned" POMS, and that the Board of Directors, including Landry, Zøhner, and Stephan Jones of TFIC, and key personnel such as Kristensen operated POMS.

41. On or around November 24, 2021, POMS entered into two "Charter Parties" with GE—each of the charter parties provided that WMO was to contribute its allocated share of financing.

42. Zøhner executed the charter parties on behalf of WMO.

43. On August 12, 2021, POMS entered into a Charter Party Agreement with Vineyard Wind1, LLC ("VWI") to construct a crew transfer vessel at Gladding Hearn Shipyard by June 1, 2023.

44. The agreement indicated that WMO would provide financing for the construction of the vessel to be delivered within 60 days of executing the agreement.

45. POMS and Gladding Hearn Shipyard executed a letter of intent on August 12, 2021.

46. WMO, at the direction of Zøhner and Kristensen, completed the first payment of $70,000 on August 18, 2021, in accordance with the agreement.

47. WMO however was unable to make the second payment in September of 2021, so "WMO, Zøhner, Kristensen, and Landry agreed that Landry would capitalize POMS with his own money and submit to GH the LOI payment."

48. Notwithstanding the POMS MOU and IOA, Defendants unilaterally sought partnership with various other firms, disregarding the exclusivity and non-compete clauses.

49. No later than October 29, 2021, Zøhner entered discussions with the company, Foss Maritime, to obtain shares in WMO.

50. Around November 3, 2021, Zøhner engaged Clarkson Shipping Company and began the "formal process for new shareholding and capital raising."

51. Also in November 2021, WMO removed all three WMO board members and replaced them with five new members, to include Kristensen, without notifying Plaintiffs as required by the POMS MOU and IOA.

52. On December 8, 2021, WMO informed Plaintiffs that Schneider had replaced Zøhner as CEO.

53. Days later, on December 17, 2021, WMO notified Plaintiffs that it would no longer be performing its agreed upon financing in the GE charter parties.

54. Schneider also informed Plaintiffs that Zøhner did not have the authority to execute the joint venture documents or enter any charter parties on behalf of WMO, nor did he have authority to agree to finance any of the projects.

55. Zøhner never received approval from the WMO Board and the WMO shareholders were not aware that Zøhner had executed POMS operating agreements on behalf of WMO.

56. Consequently, WMO would not support any corporate guarantees towards interim bridge funding in support of the funding of the new build vessels.

57. At the time of receiving this news, Plaintiffs had already invested $237,375.00 of their funds in order for POMS to execute the three contracts it had already entered with GE, Vineyard Wind and VWI.

58. In late December, Zøhner informed Plaintiffs that he and Kristensen had been in unilateral discussions with Foss Maritime, however Kristensen assured Plaintiffs that Foss was "out of the picture."

59. Plaintiffs later discovered that Zøhner (and Schneider) continued to meet with Foss's parent company in Denmark, in January of 2022.

60. In December of 2021, POMS attempted to mitigate losses suffered from WMO's breach by accommodating WMO's "new mandate" of seeking other partnerships with "US vessel owning and operating companies" that could have an ownership interest in POMS.

61. TFIC drafted an amended agreement that revised the finance strategy and partnership model that accommodated WMO's new terms, however, these efforts proved to be unsuccessful.

62. On January 7, 2022, Schneider initiated an emergency board meeting to address WMO working with POMS, and also informed GE's about the meeting.

63. This caused GE to become "very concerned" given WMO's role.

64. On January 9, 2022, TFIC and Landry sent a Demand and Notice letter to WMO to provide assurance of WMO's obligations to POMS.

65. On January 12, 2022, TFIC and Landry proposed that WMO sign an agreement that would result in a commitment to finance POMS, however WMO refused.

66. Instead, WMO was working on a proposed agreement with other partners that would effectively cut out TFIC and Landry from the deal.

67. Schneider had also arranged a meeting with GE that excluded Plaintiffs.

68. Additionally, WMO confirmed partnership with Foss, notwithstanding the noncompete clauses in the POMS MOU and IOA.

69. Finally, on January 13, 2022, Landry and TFIC received notice that WMO was resigning from POMS.

70. Landry and TFIC "rejected WMO's resignation."

71. Due to WMO's departure, GE canceled its contract with POMS, causing POMS to liquidate other contracts. Due to WMO's decision to pull out of POMS to pursue

opportunities with Foss and other US maritime companies, Plaintiffs suffered a financial loss over $18,237,700.00.

72. Those damages are for:

    a. Losses from direct out of pocket expenses;

    b. Lost time, cost of services and internal costs;

    c. Loss of development fee opportunity;

    d. Loss of GE and VW1 contract revenues;

    e. Loss of revenues upon rehire by GE and VW1;

    f. Loss of additional business opportunities due to WMO's abandonment and dissolution of the joint venture;

    g. Future salaries and affiliate revenues; and

    h. Other damages that will be demonstrated at trial.

73. All of these damages are within the direct knowledge of Zøhner and Kristiansen.

74. After the filing of the Related Action, WMO and WMO LLC has filed for bankruptcy protection.

75. The Related Action is currently proceeding against Zøhner and Kristensen.

## ADDITIONAL FACTS CONCERNING QBE

76. The Related Action was filed in September of 2022.

77. QBE retained counsel to represent Zøhner and Kristensen.

78. From that time until July of 2024, QBE did not make any substantial requests for information concerning Plaintiffs' claims instead filing a motion to dismiss in the Related Action when QBE knew that some of the counts in the Related Action would survive

such a motion and even if the case was dismissed on a jurisdictional basis, the claim would continue in another venue.

79. On February 24, 2024, the Court in the Related Action denied the motion to dismiss, noting that Zøhner and Kristensen were intimately involved in POMS by assuming leading roles as decisionmakers, salesmen and subject matter experts for POMS.

80. On or about May 17, 2024, Plaintiffs learned that QBE provides coverage for Zøhner and Kristensen for the claims in the Related Action.  As of that date, QBE still had not make any substantial request for information concerning the Plaintiffs' claims.

81. In reality, QBE did not need to ask the Plaintiffs for details concerning their claims because both Zøhner and Kristensen were intimately involved with the Plaintiffs.

## COUNT I

82. Plaintiffs repeat and reallege the averments of the foregoing paragraphs as if set forth here at full length.

83. The insurance coverage provided by QBE is an eroding policy, meaning the policy limits are reduced by the cost of defense.

84. The policy limits are a small fraction of the amount claimed by the Plaintiffs in the Related Action.

85. On June 11, 2024, Plaintiffs sent QBE a demand letter pursuant to Massachusetts General Laws Chapter 93A §§2 and 11 and Chapter 176D §3(9)(d), (f) and (g) which is attached hereto as Exhibit A and incorporated herein by reference.

86. At that time, the actions undertaken by Zøhner and Kristensen were known to QBE as QBE was paying for their respective defenses.

87. Zøhner and Kristensen's liability to the Plaintiffs has always been relatively clear based upon the undisputed facts.

88. WMO claims that Zøhner and Kristensen lacked authority to enter into the joint venture and engage the several contracts as issue on behalf of WMO.

89. Yet Zøhner and Kristensen made those representations when POMS entity was formed and when the several contracts were executed, and guarantees were made.

90. QBE has been unfairly and deceptively leveraging its settlement posture on the mistaken grounds that a U.S. judgment might be difficult to collect in Denmark against Zøhner and Kristensen.

91. Such a position is an unfair claims settlement practice and advocates prohibited and illegal conduct.

92. QBE is required to promptly settle the Related Action within the policy limits before said limits are unnecessarily wasted.

93. QBE is also required to conduct a prompt and reasonable investigation of Plaintiffs' claims.

94. Despite having access to all of the respective information and Plaintiffs' demand that QBE effectuate prompt, fair and equitable settlement of the claim, QBE has failed to do so.

95. QBE has additionally failed to conduct a prompt and reasonable investigation of Plaintiffs' claims.

96. QBE's failure to do so is causing the policy limits to be further eroded.

97. QBE has failed to comply with its duty under the aforesaid statutes.

98. The aforesaid failures took place under circumstances in which QBE knew or had reason to know that its conduct violated the aforesaid statutory obligations.

99. QBE is in violation of Massachusetts General Laws Chapter 93A and 176D.  As a direct and proximate result of these violations, Plaintiffs have been damaged in an amount to be proven at trial.

100. The conduct of QBE satisfies the factual requirements that allow Plaintiffs to recover multiple damages and their legal fees pursuant to the aforesaid statutes.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Michael Landry, Treadwell Franklin Infrastructure Capital LLC, and Patriot Offshore Marine Services, LLC pray that this Honorable Court:

    a.    Enter Judgment in Plaintiffs favor on all counts;

    b.    Award damages to Plaintiffs two or three times the amount of their damages as adjudicated at trial, together with judgment for Plaintiffs legal fees, etc. as per the above statutes; and

    c.    Award such other relief as this Court deems just and proper.

-15-

## JURY DEMAND

Plaintiffs, Michael Landry, Treadwell Franklin Infrastructure Capital LLC, and Patriot Offshore Marine Services, LLC demand a trial by jury on all claims.

                                             Respectfully submitted
                                             Plaintiffs'
                                             By their attorney,

                                             /s/ David S. Smith
                                             David S. Smith, Esq.
                                             BBO No.: 634865
                                             Olaf Aprans
                                             BBO No.: 670434
                                             Farrell Smith O'Connell
                                             Aarsheim Aprans, LLP
                                             27 Congress St., Suite 109
                                             Salem, Massachusetts 01970
                                             Tel: 978-744-8918
                                             Fax: 978-666-0383
                                             dsmith@fsofirm.com
                                             olaf@fsofirm.com